UNITED STATES *v.* JAMES H. RHODES & CO. (No. 4699)[1]

United States Court of Customs and Patent Appeals, May 28, 1952

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.
*John D. Rode* (*Ellsworth F. Quale* of counsel) for appellee.

[Oral argument April 9, 1952, by Mr. Weeks and Mr. Quale]

[1] C. A. D. 488.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, and WORLEY, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court (First Division) entered in conformity with its decision, dated May 8, 1951, (Abstract 55525, 26 Cust. Ct. 424). A rehearing sought on behalf of the Government was denied June 26, 1951.

The judgment reads:

It is Hereby Ordered, Adjudged and Decreed: that the appraisement and liquidation heretofore had in this matter be and the same are hereby declared to have been void and the matter is remanded to a single Judge of this Court who shall determine the proper dutiable value of the merchandise involved in the manner provided by law.

The merchandise consists of unmanufactured pumice stone (referred to in appellant's brief as "Pezzame pumice") which was imported from Italy and entered at the port of New York City August 11, 1948.

As unmanufactured pumice stone, it is covered by the provision in paragraph 206 of the Tariff Act of 1930 reading:

* * * Pumice stone, unmanufactured, valued at $15 or less per ton, one-tenth of 1 cent per pound; valued at more than $15 per ton, one-fourth of 1 cent per pound; * * *.

As may be seen, two classes of unmanufactured pumice stone are provided for, the respective classes being determined by the value per ton.

The first element involved in the controversy as it is presented before us relates to the dutiable value of the merchandise; that is, whether such value is "$15 or less per ton" or "more than $15 per ton," and the determination of this seems to depend upon whether the long ton (2240 pounds) or the short ton (2000 pounds) is used in making the required calculations—a matter hereinafter more fully discussed.

The second element of the controversy relates to the matter of notice to the importer, as hereinafter explained.

The case was submitted to the trial court "on the official papers," and in its decision the court set forth the pertinent facts shown by such papers. The following is taken from its decision:

The merchandise the subject of this protest consists of 7,914 bags of unmanufactured pumice stone which was imported from Italy. It was invoiced at a unit price of US $7.50 per 1,000 kilograms, which is extended on the invoice to a total of $3,187.50. The weight shown on the invoice is 425,000 kilos.

A notation in indelible pencil appears on the invoice "1/10¢/206," evidently placed there by the entrant, in accordance with the provisions of section 8.21 (b), of the Customs Regulations of 1943, indicating a claimed classification under paragraph 206 of the Tariff Act of 1930 at one-tenth of 1 cent per pound.

    *        *        *        *        *        *        *

Attached to the invoice is a slip of paper which indicates that the importer added to the invoice value on entry the sum of $3,187.50 "for value of bags not

included," and the total entered value shown on the entry for the item in question is $6,375, which is obviously the result of adding together the invoice value and the amount added on entry.

The entry describes the merchandise involved as "Crude pumice not over $15.00 T" with a Schedule A (Department of Commerce) commodity number of 5463.000 and a gross weight and a net quantity of 936,955 pounds, and the tariff paragraph and rate are shown thereon as "206" and "1/10¢," respectively. There can be no question, therefore, that the merchandise was entered as being classifiable under the first provision of paragraph 206, *supra*.

It is not stated in the trial court's decision whether it found that the importer, in making entry, computed the estimated duty on the "long ton" or the "short ton" basis.

In the brief filed before us on behalf of the Government, it is said *inter alia:*

The entered value as shown by the consumption entry, Form 7501, is a total of $6,375 for the 7,914 bags containing pumice. The commercial invoice shows that the 7,914 bags of Pazzame pumice weighs 425,000 kilos, invoiced at $7.50 per 1,000 kilos, making a total of $3.187.50. By amendment, as indicated above, the importer added for the value of 7,914 bags an identical sum of $3,187.50. This means a total of $15 per 1,000 kilos or a total of $6,375, which equaled the entered value as shown by the Customs entry on Customs Form 7501.

Accordingly, the appraised value and the entered value are identical. The appraisement shows that it was "appraised at gross weight". The appraised value, as well as the entered value, being at $15 per 1,000 kilos gross weight, was properly divided on the basis of said gross weight by the Collector, which resulted in a finding that the said entered and appraised value equaled $15.2408 per gross ton of 2,240 pounds. This is shown by an office memorandum, part of the official papers, which is dated March 3, 1950 from the Principal Liquidator J. J. McHugh to the Deputy Collector D. Lefkowits.

The invoice shows that the 7,914 bags of pumice weighed 425,000 kilos which is the equivalent of 936,955 pounds. When this figure is divided by 2,240, which is the number of pounds in a gross ton, it results in the figure of 418.283 gross tons.

When the number of gross tons 418.283 is divided into the total entered and appraised value of $6,375, it results in the figure of $15.2408 per gross ton. * * *

The brief on behalf of the importer states:

When entry was made it is apparent from the entry documents and the fact of their acceptance by the Collector in the form in which submitted, that both the importer and the Collector were of the belief that the merchandise was valued at $15 a ton or less. Whether the importer or the Collector or both computed the estimated duty on the basis of a short ton of 2,000 pounds or a metric ton of 1,000 kilograms under either of which the merchandise would be valued at $15.00 per ton or less, does not appear.

The fact is that the importer entered on the basis of a unit of 1,000 kilograms at $7.50 plus containers in an amount to equal exactly $15.00 per 1,000 kilograms and the appraiser made his return on the same basis.

It was only after the appraiser's return was made that the Collector, following Section 2951 of the Revised Statutes which provides that the term "ton" shall be construed as being 2,240 pounds, computed the dutiable value per gross ton as more than $15.00.

It is noted that in the foregoing quotation from the brief on behalf of the importer there is no statement of the basis used for entering the merchandise at a valuation of one-tenth of one cent per pound; that is, it does not state definitely which basis—"long ton" or "short ton"—was used in making the entry.

It is asserted in the brief that the collector accepted the entry documents "in the form in which submitted" and that it is apparent from this that "both the importer and the Collector were of the belief that the merchandise was valued at $15 a ton or less."

We find nothing in the record upon which a conclusion may be based that the collector joined the importer in "the belief that the merchandise was valued at $15 a ton or less," at the time the entry was made, but whatever may have been his *belief* at that time, it is clear that, upon the basis of the appraiser's description of the merchandise and his advisory classification, the collector did determine the value to be "more than $15 per ton."

The procedure seems to have conformed to section 16.2 (b) of the 1943 Customs Manual which reads:

(b) The collector shall determine whether the advisory classification by the appraiser is correct, and if it is not he shall so inform that officer. When the merchandise is advisorily classified by the appraiser under a paragraph prescribing rates which vary according to value, size, or other characteristics, it shall be the duty of the collector to determine whether the advisory classification is correct and to calculate and determine which rate of duty applies to each item.

April 25, 1949, the collector *without having given notice to the importer*, in conformity to section 501 (a) of the Tariff Act of 1930, as amended, liquidated the entry on the basis of duty at the rate of ¼ of one cent per pound, and the importer on June 23, 1949, filed its protest alleging:

Said merchandise is not dutiable as assessed. It is properly dutiable at only ¹⁄₁₀¢ lb. under Par. 206. It is valued at not more than $15 per ton. The total appraised value should have been divided by the gross weight in order to arrive at the appraised value per ton.

The report of the collector relative to the protest bears date of October 24, 1949. It was therein stated that his original decision had been reviewed and no reason for modifying it had been found.

When the case was called for trial before the Customs Court on March 7, 1950, counsel for the importer moved to amend the protest by adding:

* * * if the value exceeds $15. per ton, then the liquidation is premature and void in that no notice of appraisement was given to the importer and the appraised value is higher than the entered value or that there was a change in the classification of the merchandise resulting from the appraiser's determination of value. * * *

The motion was granted, and the trial court in the end rendered the judgment quoted, *supra*.

Before us counsel for the Government argue, in substance, that when the long ton (2240 lbs.), use of which is required by the statute R. S. section 2951 (see *Whittaker, Clark & Daniels, Inc.* v. *United States*, 34 C. C. P. A. (Customs) 164, C. A. D. 360), was used in making the calculations, it resulted in a showing that the value of the involved merchandise was $15.2408 per ton; that, therefore, the appraisement made by the appraiser and adopted by the collector was valid; and that, since it was valid, it was not incumbent upon the collector to comply with the provision in section 501 (a) of the Tariff Act of 1930, as amended, reading:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value.

Counsel for the Government, therefore, urge that this court reverse the judgment of the Customs Court *in toto*, but the concluding paragraph of the Government's brief reads:

However, if this Court is of the opinion that notice of appraisement was necessary, it is suggested that the cause be remanded directing the Customs Court to sustain the protest on the ground that the liquidation was premature. All that need be done to make the appraisement complete is to send the importer a notice of appraisement. *Alfred Dunhill of London, Inc.* v. *United States*, 22 Cust. Ct. 209, C. D. 1178.

In the brief before us on behalf of the importer, it is said:

The entry documents show that in computing the entered value there was added to the commercial invoice price of $3,187.50 the sum of $3,187.50 "for value of bags not included", although the consular invoice, which was filed later than the entry, shows that the cost of the bags actually was included in the commercial invoice price. This notation was checked by the appraising officer and on its face shows that the appraiser, instead of finding the cost of the coverings as required by the statute, Section 402 of the Tariff Act, as amended, found a value for the containers. * * *

Obviously, this presents a question relative to the correctness of the appraisement which properly should be passed upon by the Customs Court or, in the first instance, by a single judge thereof.

An outstanding feature of the controversy is that the importer never had an opportunity to contest, in the manner provided in section 501 of the Tariff Act of 1930, as amended, the appraisement made by the appraiser and adopted by the collector for duty purposes. It received no notice from the collector that a valuation higher than one-tenth of one cent per pound, the rate specifically claimed in the entry, had been adopted on the basis of the appraisement by the appraiser.

We think the importer was entitled to have "its day in court" on that question. It may be that it will be unable to sustain its entry claim of value, and that in the end the appraisement of the appraiser

will be shown to be the correct dutiable basis, but the importer was entitled to have that question determined before the duty assessment was liquidated.

We conclude that the failure to give the notice required had the effect of voiding the appraiser's appraisement and rendered the collector's liquidation invalid. We, therefore, *approve* and *affirm* the action of the Customs Court in remanding the case to a single judge of that court to have the proper dutiable value of the merchandise involved determined in the manner provided by law.

This opinion will be certified to the Customs Court to the end that further proceedings may be had in conformity with its order, as expressed in its judgment, *supra*.